UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHEL TOLIVER,

                                        Plaintiff,

            vs.                                          No. 9:12-CV-77
                                                          (MAD/ATB)

BRIAN FISCHER, et al.,

                                        Defendants.

_____

MICHEL TOLIVER, Plaintiff pro se
CATHY Y. SHEEHAN, Ass't Att'y Gen., Attorney for Defendants
      (except Defendant North)

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

On January 17, 2012, plaintiff commenced this civil rights action, pursuant to

42 U.S.C. § 1983, alleging that 20 employees of the New York State Department of

Correctional and Community Services ("DOCCS") violated his constitutional rights

during his confinement at the Shawangunk Correctional Facility ("Shawangunk").

(Compl., Dkt. No. 1).  By Decision and Order dated May 3, 2012, the Honorable Mae

A. D'Agostino, United States District Judge, dismissed, *sua sponte*, defendants

Schneiderman, Bellamy, and Prack from the action because the complaint did not state

facts suggesting their personal involvement in the alleged violations of plaintiff's

constitutional rights.  (Dkt. No. 9 at 8-10).

On June 28, 2012, plaintiff filed an amended complaint (Dkt. No. 27), which, by

Decision and Order dated December 6, 2012 (Dkt. No. 85), Judge D'Agostino accepted for filing against 17 of the original defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint.[1]  Liberally construed, the surviving claims in plaintiff's amended complaint include a First Amendment claim, based on the defendants' alleged filing of false misbehavior reports against plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; an equal protection claim based on alleged discrimination against plaintiff because of his race, disability, and/or sexual orientation; a conspiracy claim related to the retaliation and discrimination claims; a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and an Eighth Amendment claim for failure to provide adequate medical attention. (Dkt. No. 27 at 8-9, 35).[2]  Plaintiff seeks both monetary and injunctive relief.  (Dkt. No. 27 at 14).

The Attorney General's Office has filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of plaintiff's amended complaint in its entirety, on behalf

---

[1] Judge D'Agostino again dismissed all claims against defendants Schneiderman, Bellamy, and Prack because the amended complaint did not adequately allege their personal involvement.  (Dkt. No. 85 at 3-5).

[2] Plaintiff has subsequently attempted to file two motions to further amend or supplement his complaint (Dkt. Nos. 77, 146); but this court has denied both motions because of plaintiff's failure to support his motions with a proposed amended pleading, and because his submissions were "'exceedingly confusing,' piecemeal, and lengthy."  (Dkt. No. 147 at 4 (citing Dkt. No. 98 at 7-8), 7).

of all but one of the remaining defendants.[3]  (Dkt. No. 134).  Plaintiff has responded to

the motion to dismiss (Dkt. No. 145), and defense counsel chose not to file a reply

(Dkt. No. 150).  The motion to dismiss has been referred for Report and

Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c),

by Judge D'Agostino.

## I.    Facts and Contentions

When plaintiff was transferred to Shawangunk in February of 2011, he required

the assistance of a walker when inside his cell, and otherwise needed a wheelchair to

ambulate, because of back problems.  (Am. Compl., Dkt. No. 27 at 17).[4]  He was

assigned to a housing unit that was not wheelchair accessible so that he could attend a

mandatory program available only in that cell block.  (Dkt. No. 27 at 19).  Plaintiff

was told that his wheelchair had to be kept in a bin in a storage room and retrieved

from that location whenever he required it to move around the facility.  (Dkt. No. 27 at

17).  Plaintiff alleges that he suffered substantial pain, and was injured on several

occasions while attempting to store or retrieve his wheelchair, and that the defendants

---

[3] C.O. North, who is no longer an active DOCCS employee (Dkt. No. 91), has not been
served with the amended complaint and is not currently represented in this action.  The Attorney
General's Office represents former DOCCS Commissioner Brian Fischer, Supt. Joseph T. Smith,
Dep. Supt. W. Maly, C.O. J. Stefinik, Lt. J. Gardner, C.O. Stone, Dep. Com. Lucien LeClaire,
Sgt. Aube, C.O. Gaye (John Doe), C.O. Keys, Cpt. L. Pingott, C.O. D. DeGraff, Sgt. Preston,
C.O. R. Cutler, C.O. Budziszewski, C.O. R. Kane, and C.O. J. Peterson.  (Def.s' Mem. of Law at
1, Dkt. No. 134-1).  Plaintiff apparently misspelled the names of defendants Pingott and Peterson
in his papers; the court will use the spellings from defense counsel's papers.

[4] Because the pages of the amended complaint are not all consecutively numbered, the
court will refer to the pages in the header added, upon filing, by the court's CM-ECF system.

ignored these serious medical issues and delayed his referral for treatment. (Dkt. No. 27 at 17-18, 21-24). Plaintiff further claims that his repeated requests for inmate assistance with storing and retrieving his wheelchair were denied. (Dkt. No. 27 at 17-20).

Plaintiff alleges that, between March 2011 and May 2012, he filed a number of grievances, implicating various defendants, regarding the conditions of his confinement, including issues relating to the storage and retrieval of his wheelchair and his ability to take extended showers because of his medical issues. (Dkt. No. 27 at 11-13, 40-41, 72-81). Plaintiff claims that defendants filed numerous false misbehavior reports against him in retaliation for pursuing grievances (Dkt. No. 27 at 24-26, 41-59), and because of his race and sexual orientation (as overtly gay) (Dkt. No. 27 at 35, 58-59). Plaintiff further alleges that he was denied due process in connection with the disciplinary hearings against him because he was found guilty by a biased hearing officer on many misbehavior reports, despite overwhelming evidence of his innocence or other mitigating circumstances. (Dkt. No. 27 at 25, 42, 49, 51-52).

Defendants contend that defendants Fischer, Smith, Maly, Pingott, and LeClaire should be dismissed because the amended complaint does not adequately allege their personal involvement in any constitutional violation. (Def.s' Mem. of Law at 5-6, Dkt. No. 134-1). Defense counsel argues that plaintiff does not plausibly allege a causal connection between plaintiff's grievances and the misbehavior reports filed against him by various defendants, as required to support a retaliation claim. (*Id.* at

13-15).  The defendants further assert that plaintiff's claim of discrimination fails because it is based on allegations of verbal harassment that are not actionable.  (*Id*. at 6-7).  Plaintiff's conspiracy claim is barred, according to defense counsel, by the intracorporate conspiracy doctrine.  (*Id.* at 7-8).  The defendants contend that plaintiff's conclusory assertion that the disciplinary hearing officer was biased do not support a due process claim.  (*Id.* at 11-13).  Finally, defense counsel argues that plaintiff's medical care claim does not adequately allege facts satisfying the subjective and objective elements of an Eighth Amendment violation.  (*Id.* at 9-11).

For the reasons set forth below, this court recommends that the defendants' motion to dismiss be granted in part and denied in part.  In particular, this court recommends that defendants Fischer, Maly, and LeClaire be dismissed based on a lack of personal involvement, and that plaintiff's conspiracy claim be dismissed pursuant to the intracorporate conspiracy doctrine.  This court otherwise recommends that defendants' motion be denied.

## II.   <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (*citing Bell Atl. Corp*., 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient

5

to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999). In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

## III.  **Personal Involvement**

For the reasons set forth below, plaintiff's claims against defendants Fischer, LeClaire, and Maly may be dismissed because plaintiff has not adequately alleged that they were personally involved in any constitutional violations. However, the allegations of personal involvement with respect to defendants Smith and Pingott are

adequate, at least in the context of a Rule 12(b)(6) motion.

## A.     Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (*citing, inter alia, Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).[5]

---

[5] Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon*, are still viable after *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  *See, e.g., Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.  *Id*.  In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'"  *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)).  See also *Young v.*

### B. Analysis

#### 1. Defendants Fischer and LeClaire

The only specific allegation in the amended complaint suggesting the personal involvement of former DOCCS Commissioner Fischer and Dep. Com. LeClaire relates to the latter's April 26, 2011 letter to plaintiff. (Dkt. No. 27 at 29, 31, 63, 64, 67). In the letter, defendant LeClaire states that defendant Fischer asked him to respond to plaintiff's letter regarding misbehavior reports. Defendant LeClaire then advises that he was referring plaintiff's letter to Supt. Smith for investigation and any appropriate action because there was no basis for review of the Tier II disciplinary proceeding against plaintiff above the level of the facility superintendent. (Dkt. No. 27 at 63). The personal involvement of a supervisory official cannot be established if his only involvement is to refer an inmate's complaint to the appropriate staff for investigation. *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoners to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official).

Plaintiff also makes conclusory claims about the failure of defendants Smith and LeClaire to oversee subordinate DOCCS employees, and the role of these two

---

*Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at *10-12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

defendants in allowing a pattern or retaliation and discrimination by ignoring

plaintiff's various grievances and Article 78 proceedings. Such unsupported

allegations are not adequate to establish their personal involvement. *See Smart v.*

*Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a supervisory

official to investigate a letter of protest written by an inmate is not sufficient to show

personal involvement); *Pagan v. Correctional Medical Services*, No. 11-CV-1357,

2012 WL 2036041, at *6-7 (S.D.N.Y. June 6, 2012) (courts in this district have

repeatedly held that affirming the administrative denial of a prison inmate's grievance

by a high-level official is insufficient to establish personal involvement under section

1983).[6]

### 2.    Defendant Maly

The only specific allegation in the amended complaint regarding defendant

Maly is that, as Acting Superintendent, he denied one of plaintiff's grievances

claiming that plaintiff had been denied several physical therapy appointments because

of discrimination in October 2011. (Dkt. No. 27 at 12, 30, 31). According to the

---

[6] In his response to the Rule 12(b)(6) motion, plaintiff attempts to bolster his claim that former Com. Fischer was "personally involved" in violations of plaintiff's constitutional rights. Plaintiff claims that, while the Commissioner was visiting Shawangunk "during this period," plaintiff overheard him comment "Oh, that's Toliver[;] good job with him." (Dkt. No. 145-1 at 58-59). While it is not clear when plaintiff claims defendant Fischer made this remark, it is recounted in the context of plaintiff's discussion about incidents in late 2013, well after his filing of the amended complaint. This ambiguous remark, if it was indeed made by defendant Fischer, would not seem probative of his personal involvement in the alleged constitutional violations recounted in the amended complaint. In any event, generally one cannot amend a complaint in a response to a motion to dismiss. *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 n.19, (S.D.N.Y. 2013) (*citing Wright v. Ernst & Young. LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

plaintiff, Mr. Maly's letter denying the grievance stated that Sgt. Lutz had spoken with the plaintiff and the physical therapist and determined that the plaintiff had missed several physical therapy appointments. (Dkt. No. 27 at 30).

In *McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004), the Second Circuit noted that it was "questionable [as to] whether an adjudicator's rejection of a grievance would make him liable for the conduct" of which the inmate complained.[7] The district courts within this Circuit "are divided regarding whether review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act." *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (collecting cases). The *Burton* court noted that district courts have found personal involvement based on denying a grievance where (1) the official undertakes some kind of investigation into the initial denial; (2) the official provides a detailed and specific response to the grievance rather than a *pro forma* denial; or (3) the grievance involves an ongoing violation "such that the 'supervisory official who reviews the grievance can remedy it directly.'" *Id.* (*quoting Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)); *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at *15 (D. Conn. Mar. 13, 2014) (a supervisory official confronted with an "ongoing" constitutional violation who reviews a grievance or appeal regarding that violation, is "personally involved" if he or she can remedy the violation

---

[7] The Second Circuit concluded, however, that "[w]hen allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." 386 F.3d at 438.

directly).

By delegating the investigation of this grievance to Sgt. Lutz and merely reporting Sgt. Lutz's findings in his letter to plaintiff, defendant Maly did not become personally involved in any alleged constitutional violation. *Sealey v. Giltner*, 116 F.3d at 51. Moreover, the amended complaint does not suggest that, despite his many complaints and grievances, plaintiff had any further problems with respect to physical therapy appointments. Absent allegations of an ongoing violation that Mr. Maly could have remedied, his denial of this one grievance is not sufficient to establish his personal involvement in any alleged infringement of plaintiff's constitutional rights.[8]

### 3.   Defendant Smith

With respect to Shawangunk Superintendent Smith, plaintiff alleges that he affirmed the denial of at least one grievance, filed on May 6, 2011, relating to staff denials of plaintiff's requests for assistance in moving his wheelchair. (Dkt. No. 27 at 20). Plaintiff alleges that various defendants continued to engage in retaliatory and discriminatory conduct relating to the storage and retrieval of plaintiff's wheelchair.[9] Based on the authority cited immediately above, plaintiff's allegations adequately

---

[8] In his response to the motion to dismiss, plaintiff tried to bolster his showing of personal involvement of Dep. Supt. Maly by making allegations about his oversight of a disciplinary hearing in July 2012, after Maly had been served with the amended complaint in this action. (Dkt. No. 145-1 at 61-62). Based on the authority stated above, the court cannot decide the pending motion to dismiss based on plaintiff's attempt to rely on new allegations outside of the time frame of the operative amended complaint, without making a proper motion to supplement.

[9] For example, plaintiff alleges that after denying plaintiff's grievance in July 2011 (Dkt. No. 27 at 20), the Superintendent affirmed the guilty disposition on a misbehavior report issued by C.O. Stone in October 2011 alleging that plaintiff failed to obey an order with respect to getting out of his wheelchair and storing it (Dkt. No. 27 at 52-54).

allege that the Superintendent was personally involved, in that he failed to remedy an ongoing violation that was within his power to address.

Moreover, defendant Smith affirmed guilty dispositions on a number of misbehavior reports against plaintiff, despite plaintiff's allegations that hearing officer Gardner was biased and that he ignored evidence establishing plaintiff's innocence. (Dkt. No. 27 at 45-46, 49, 57).[10] In the context of a Rule 12(b)(6) motion, these allegations are sufficient to support a claim that defendant Smith was personally involved in the retaliation and due process violations alleged against defendant Gardner. *See, e.g.*, *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (concluding that the plaintiff had "sufficiently alleged that Superintendent Smith was personally involved in depriving him of his due process right to call witnesses" at the disciplinary hearing when Smith affirmed the guilty finding on appeal); *Friedland v. Otero*, No. 3:11cv606, 2014 WL 1247992, at *10-11 (D. Conn. Mar. 25, 2014) (defendant Choinski's review of plaintiff's due process claims in connection with the appeal of the disciplinary proceeding report constituted sufficient personal involvement, in that he failed to remedy the underlying procedural defects associated with the disciplinary hearing) (collecting cases).

### 4. Defendant Pingott

Plaintiff documents that Capt. Pingott investigated and denied at least one of his grievances about the storage and retrieval of plaintiff's wheelchair and related injuries sustained in March 2011. (Dkt. No. 27 at 11-12, 45, 61). Plaintiff further alleges that

---

[10] *See* section VII B, below.

he filed a grievance about defendant Pingott's response. (Dkt. No. 27 at 11-12). Finally, plaintiff claims that Capt. Pingott told his subordinates to "write [plaintiff's] ass up" on misbehavior reports in retaliation for his grievances. (Dkt. No. 27 at 65). Plaintiff's amended complaint adequately alleges Capt. Pingott's personal involvement in constitutional violations, at least in the context of a Rule 12(b)(6) motion.

## IV. **Retaliation**

### A. **Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380.

A prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, if the defendant initiated false disciplinary charges against plaintiff in retaliation for his exercise of a

constitutionally protected right, plaintiff's First Amendment rights are implicated even if the plaintiff was entitled to, and did receive, full procedural due process. *Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988). Filing prison grievances and lawsuits are clearly constitutionally protected activities in the context of a retaliation claim. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* In the context of a disciplinary hearing, the type of evidence required to establish a causal connection between plaintiff's protected activity and the defendant's alleged adverse action includes: temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing, and statements from the defendants regarding their motives. *Santiago v. Whidden*, No. 3:10-CV-1839, 2012 WL 668996, at *7 (D. Conn. Feb. 29, 2012) (*citing Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007)).

B.     **Analysis**

Defense counsel argues that plaintiff's "conclusory" allegations that various defendants retaliated against him, for pursuing various grievances, by filing numerous misbehavior reports against him during the same time period are insufficient to state a "plausible" claim of retaliation. (Def.s' Mem. of Law at 14-15). Defendants contend that plaintiff fails to allege, with specificity, that the defendants who filed misbehavior reports against him had knowledge of prior grievances, or other facts suggesting a

14

causal link between plaintiff's protected activities and the defendants' alleged adverse actions. (*Id*.) While many of plaintiff's allegations of retaliation may not withstand a well-documented motion for summary judgment, they are adequate to survive a motion to dismiss under Rule 12(b)(6).

Plaintiff alleges that, on March 9 and 10, 2011, he "circulated . . . to the above-named defendants" his first grievances against defendant Kane, and perhaps also against defendants Peterson and Keys, relating to their orders that plaintiff store and retrieve his wheelchair. (Dkt. No. 27 at 11, 33-34).[11] Plaintiff claims that five false misbehavior reports, relating to his problems with moving his wheelchair and related physical limitations, were then filed against him in retaliation for those first grievances. On March 10th, two misbehavior reports were filed against plaintiff–one issued by defendant Peterson and witnessed by his "partner," defendant Kane, and one issued by defendant Keys–defendant Kane's "friend." (Dkt. No. 27 at 33-34, 43-44). On March 13, 2011, defendant Kane's "partner," defendant Stefinik filed disciplinary charges relating to plaintiff's failure to properly store his wheelchair. (Dkt. No. 27 at 32, 45-46). Defendant Cutler filed a misbehavior report against plaintiff on March 14th, because he would not get up to go get his medications, purportedly because plaintiff could not move due to back pain and spasms. (Dkt. No. 27 at 24, 47).[12] On

---

[11] Plaintiff's 81-page amended complaint is disorganized and often unclear about significant factual details. The court has construed plaintiff's pro se pleading liberally, as required by Second Circuit authority.

[12] In plaintiff's response to the Rule 12(b)(6) motion, he asserted that defendant Cutler was another "co-worker and friend" who worked on the same housing unit as the other defendants. (Dkt. No. 145-1 at 11-12).

March 25, 2011, defendant DeGraff charged plaintiff with having contraband–two Motrin pills for which plaintiff had a prescription–charges on which plaintiff was ultimately found not guilty by hearing officer Gardner. (Dkt. No. 27 at 24, 34-35, 48).[13]

A well-documented summary judgment motion might well establish that the March 10 misbehavior reports were filed **before** plaintiff submitted his first grievances. The defendants who filed the misbehavior reports in the days following plaintiff's first grievance(s) might be in a position to file affidavits documenting that they were not then aware of the grievances, notwithstanding plaintiff's claim that he "circulated" them to the defendants. Moreover, a summary judgment motion might clarify who was named in plaintiff's first grievances and persuade the court that no rational fact finder would conclude that correction officers not implicated in the grievances had any cause to retaliate against plaintiff. *See, e.g., Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (*citing Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v.*

_____

[13] Plaintiff asserted, in his response to the Rule 12(b)(6) motion, that defendant DeGraff was a "friend of Defendants Stef[i]nik, Pet[]erson, K[]ane, Cutler and Keys." (Dkt. No. 145-1 at 13). The amended complaint also alleges that plaintiff filed another grievance, on March 22, 2011, alleging, *inter alia*, that unspecified officers tampered with his food. (Dkt. No. 27 at 11). Plaintiff alleges that he filed additional 2011 grievances on March 25, March 30, April 22, and May 6 implicating defendants Pingott, DeGraff, and unspecified others, the last of which was denied by Supt. Smith. (Dkt. No. 27 at 11-12, 20-21, 29).

*Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in). However, the court cannot, based solely on the amended complaint, liberally construed, find that these allegations of retaliation should be dismissed under Rule 12(b)(6).

Plaintiff alleges that defendant Stone issued a misbehavior report against him on October 3, 2011, relating to plaintiff's refusal to use a filthy towel provided by C.O. Bucci,[14] even though C.O. Stone was not present for the incident. (Dkt. No. 27 at 51). During the disciplinary hearing, plaintiff asked C.O. Stone why he constantly called plaintiff a "Homo Niggerette." Plaintiff alleges that C.O. Stone retaliated against plaintiff, for his question during the hearing and for filing unspecified "grievances of discrimination based on plaintiff's race and sexual orientation" (Dkt. No. 27 at 35), by issuing another misbehavior report relating to plaintiff's use of his wheelchair, on October 14, 2011. (Dkt. No. 27 at 25-26, 35-36, 52-54). Plaintiff claims that, at some point, C.O. Stone "promised to 'make up for his mistakes at the previous hearing'" and told plaintiff "[i]f I have to write your ass up every day I will– so prepare." (Dkt. No. 27 at 53). While plaintiff's allegations are conclusory in some respects, his amended complaint adequately alleges retaliation by C.O. Stone in connection with this sequence of events.

On July 25, 2011, defendant Budziszewski filed a misbehavior report against plaintiff for disobeying an order to get off the phone and return to his cell. Plaintiff

---

[14] C.O. Bucci is not named as a defendant in the amended complaint.

alleges that he was found guilty notwithstanding the fact that phone records showed that he made no call at the relevant time. (Dkt. No. 27 at 25, 49). Ultimately, the disposition was expunged as a result of an Article 78 proceeding plaintiff pursued in state court. (Dkt. No. 145-1 at 14-16). Plaintiff alleges that, on October 17, 2011, he filed a grievance against defendant Budziszewski, who retaliated by filing misbehavior reports against plaintiff relating to the duration of his showers on December 12, 2011, February 6, 2012, and March 7, 2012.[15] Plaintiff was convicted on the disciplinary charges although he purported to have a medical pass for an extended, 25-minute shower. (Dkt. No. 27 at 55-59). Plaintiff claims that, at the time of one of the disciplinary hearings, defendant Gardner told him "keep poking the Bear with these . . . grievances . . . and watch what happens to your ass. Every time you get a ticket you will be found guilty regardless." (Dkt. No. 27 at 57).[16] Ultimately, at least one of the disciplinary dispositions was reversed as a result of an Article 78 proceeding. (Dkt. No. 145-1 at 24). The allegations regarding defendant Budziszewski state a plausible claim of retaliation that cannot be dismissed under Rule 12(b)(6).[17]

---

[15] Plaintiff alleges he filed another grievance with respect to the duration of his showers on December 12, 2011, but the amended complaint does not specify whether defendant Budziszewski was named in that grievance. (Dkt. No. 27 at 12-13).

[16] Plaintiff, in his response to the Rule 12(b)(6) motion, claimed that, at some point before the February 6, 2012 misbehavior report was filed, defendant Budziszewski, promised to "'get plaintiff again' for the grievances." (Dkt. No. 145-1 at 22).

[17] Because defendant North has not appeared in this case and is not a party to the pending Rule 12(b)(6) motion, the court will not address the allegations of retaliation against C.O. North.

## V.    Discrimination/Equal Protection

The amended complaint alleges that defendants discriminated against plaintiff on the basis of his disability, sexual orientation, and/or race. (Dkt. No. 27 at 9, 35-36, 52, 56, 58-59). Defendants argue that verbal harassment of the plaintiff, including the use of the term "Homo Niggerette" by defendants Stone and Budziszewski to taunt plaintiff, does not constitute actionable discrimination under Section 1983. (Def.s' Mem. of Law at 6-7). While verbal harassment alone does not support a claim of unconstitutional discrimination, the amended complaint alleges an adequate equal protection claim.

### A.    Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (*citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). A plaintiff alleging a violation of his equal protection rights must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination, typically against an identifiable or suspect class, such as race or religion. *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, the plaintiff must establish that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

"'In applying the Equal Protection Clause to most forms of state action, [courts] . . . seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.'" *Pedersen v. Office of Personnel Management*, 881 F.

19

Supp. 2d 294, 309 (D. Conn. 2012) (*quoting Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

Courts apply heightened equal protection scrutiny to those laws that burden a

fundamental right or target a suspect class, such as those based on race, national

origin, or sex. *Id*. (*citing*, *inter alia*, *Romer v. Evans*, 517 U.S. 620, 629, 631 (1996)).

Certain "suspect" classifications, including those based on race, are subject to

strict judicial scrutiny, and must further a compelling state interest and be narrowly

tailored to accomplish the purpose. *Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009).

The Second Circuit has held that homosexuality is "quasi-suspect (rather than

suspect)" category, that is subject to heightened or intermediate judicial scrutiny,[18] but

not strict scrutiny. *Windsor v. U.S.*, 699 F.3d 169, 185 (2d Cir. 2012), *judgment aff'd*,

*U.S. v. Windsor*, __ U.S. __, 133 S. Ct. 2675 (2013).[19] "The Equal Protection Clause

permits distinctions which are based on a person's disability, if they are rational and

serve a legitimate end." *Wiggins v. N.Y. City Dep' of Corr.*, No. 06 Civ.1946, 2008

WL 3447573 at *8 ( S.D.N.Y. Aug. 12, 2008) (*citing Garcia v. State Univ. of N.Y.*

*Health Scis. Ctr.*, 280 F.3d 98, 109 (2d Cir. 2001)).

Alternatively, an equal protection claim can sometimes be sustained even if the

plaintiff does not allege "class-based" discrimination, but instead claims that he has

been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.*, 553

---

[18] "To withstand intermediate scrutiny, a classification must be 'substantially related to an important government interest.' . . . 'Substantially related' means that the explanation must be 'exceedingly persuasive.'" 699 F.3d 185 (citations omitted).

[19] The Supreme Court in *Windsor* did not consider whether homosexuals constitute a suspect class. 133 S. Ct. at 2695-96.

U.S. 591, 601 (2008). The Equal Protection Clause "secure[s] every person . . . . against intentional and arbitrary discrimination" by state officials. *Willowbrook v. Olech*, 528 U.S. 562, 564, (2000). Thus, in a "class of one" claim, the Equal Protection Clause requires a "rational basis for the difference in treatment." *Id.*

Mere verbal harassment, profanity, or even racial epithets, "'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *See, e.g., Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (collecting cases); *Webster v. Fischer*, 694 F. Supp. 2d 163, 187 (N.D.N.Y. 2010). However, when alleged harassment amounts to more than verbal taunts and includes other more serious, ongoing constitutional deprivations, a plaintiff should be given an opportunity to pursue his constitutional claims. *Toliver v. City of New York*, 530 F. App'x 90, 92-93 (2d Cir. 2013) (reversing district court's granting of defendants' Rule 12(b)(6) based on the lower court's erroneous conclusion that plaintiff alleged mere verbal harassment which did not support an actionable constitutional deprivation).

### B. Analysis

Plaintiff alleges that, unlike four other handicapped inmates who were allowed to take extended showers with impunity, he was disciplined for trying to take longer showers, despite having medical authorization. (Dkt. No. 27 at 13, 58-59). Plaintiff also claims that defendant Budziszewski, who filed multiple, retaliatory misbehavior reports against plaintiff relating to the length of his showers, was one of the correction

21

officers who consistently referred to plaintiff as "The Homo Niggerette." (Dkt. No. 27 at 59). Based on the authority cited above, plaintiff's allegations of racist taunts, combined with the more serious, related claims of unconstitutional retaliation, are sufficient to state a "class of one" equal protection claim, and perhaps a discrimination claim based on race and/or sexual orientation. In the context of a summary judgment motion, defendants may be able to document a rational, or even compelling penological interest in how they treated plaintiff vis à vis other handicapped inmates in connection with use of the shower. However, the equal protection claim in the amended complaint is adequate to withstand a Rule 12(b)(6) motion.[20]

## VI.   Conspiracy

The amended complaint alleges that all of the defendants conspired to "discriminate, harass, and retaliate" against plaintiff by pursuing false disciplinary charges against him over a period of more than one year. (Dkt. No. 27 at 8). Defense counsel argues that plaintiff's conspiracy claim should be dismissed under the "intracorporate conspiracy doctrine." This court agrees, and recommends that the duplicative and conclusory conspiracy claim in the amended complaint be dismissed.

### A.   Legal Standards

"To survive a motion to dismiss, a conspiracy claim under 42 U.S.C. § 1983

---

[20] In his response to the Rule 12(b)(6) motion, plaintiff also argues that he was denied equal protection because, by requiring him to store and retrieve his wheelchair under physically difficult circumstances, the defendants treated plaintiff differently from "similarly situated inmates using wheelchairs and/or walkers." (Dkt. No. 145-1 at 19). While this equal protection claim is more difficult to discern from the amended complaint, the court will not preclude plaintiff from pursuing this claim, without prejudice to the defendants challenging it in a subsequent summary judgment motion.

must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. . . . Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Vega v. Artus*, 610 F. Supp. 2d 185, 202-03 (N.D.N.Y. 2009) (*citing, inter alia*, *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).

"The intracorporate conspiracy doctrine provides that 'if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . employees, each acting within the scope of his employment[,] there can be no actionable conspiracy.' . . . The intracorporate conspiracy doctrine 'bars conspiracy claims against employees of entities such as [DOCCS] (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed." *Richard v. Fischer*, No. 11-CV-6013, 2014 WL 3974158, at *8 (W.D.N.Y. Aug. 7, 2014) (collecting cases).

### B.  Analysis

The Second Circuit has not yet validated the "intracorporate conspiracy doctrine" in the context of a section 1983 action. *Rahman v. Fischer*, No. 9:10-CV-1496 (LEK/TWD), 2012 WL 4492010, at *13 (N.D.N.Y. Sept. 28, 2012) ("[t]he Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, . . . but has not extended its application of the doctrine to conspiracy claims under §

1983) (citations omitted). However, numerous district courts have applied the doctrine to dismiss conspiracy charges, under Rule 12(b)(6), relating to Section 1983 claims of retaliation and discrimination similar to those raised in this case. *See, e.g.*, *Vega v. Artus*, 610 F. Supp. at 193, 205-06 (dismissing intracorporate conspiracy claim relating to allegations that defendants harassed, discriminated against, and retaliated against plaintiff (*inter alia*, by filing false misbehavior reports), because of plaintiff's perceived sexual orientation); *Graham v. Peters*, No. 13-CV-705JTC, 2013 WL 5924727, at *1, 5 (W.D.N.Y. Oct. 31, 2013) (dismissing, under intracorporate conspiracy doctrine claim that defendants conspired to retaliate against plaintiff for exercising his First Amendment rights, by subjecting him to excessive force and false disciplinary charges); *Richard v. Fischer*, 2014 WL 3974158. at *8-9 (dismissing conspiracy claim under intracorporate conspiracy doctrine based on allegations that the defendants discriminated in making inmate work assignments based on race and religion); *Rahman v. Fischer*, 2012 WL 4492010, at *1, 13 (dismissing, based on the intracorporate conspiracy doctrine, claims that defendants conspired to retaliate against plaintiff, by denying him access to classes and a locker, to punish him for pursuing his First Amendment rights to exercise his religion and access the courts).

Some district courts in this Circuit have declined to apply the intracorporate conspiracy doctrine to dismiss conspiracy claims based on more egregious constitutional violations, such as unprovoked assaults, finding there was at least an issue of fact as to whether defendant correction officers were acting, not in the scope

of their employment, but for purely personal reasons.[21]  However, given the nature of the underlying alleged constitution claims in this case, plaintiff's conclusory allegations that the defendants were clearly pursuing a "personal" agenda (Dkt. No. 145-1 at 74), are not enough to state a plausible claim that the defendants were not acting within the scope of their employment.  *See, e.g., Vega v. Artus*, 610 F. Supp. at 205 ("in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff"). Based on the authority above, this court recommends that plaintiff's conspiracy claim be dismissed under the intracorporate conspiracy doctrine.[22]

## VII.  **Due Process**

### A.  **Legal Standards**

To begin a due process analysis relating to prison disciplinary proceedings, the

---

[21] *See, e.g., Medina v. Hunt*, No. 9:05-CV-1460, 2008 WL 4426748, at *8-10 (N.D.N.Y. Sept. 25, 2008) (a triable issue of fact exists regarding whether officers acted pursuant to their personal interests where a prisoner alleged that officers assaulted him in retaliation for participating in a federal lawsuit); *Hill v. City of New York*, No. 03 CV 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that the personal interest exception applies, and allowing conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force); *Randle v. Alexander*, 960 F. Supp. 2d 457, 475 (S.D.N.Y. 2013) (there is no fair interpretation of plaintiff's allegations that suggests that the defendants were acting within the scope of their responsibilities as prison guards when they forced plaintiff and another inmate to fight each other in the mantrap area, and then tried to cover up the fight).

[22] The courts notes that, as in *Rahman v. Fischer*, 2012 WL 4492010, at *13 n. 18, plaintiff's conspiracy claim "appears largely duplicative of many of the other claims raised in his [Amended] Complaint."

court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[23]

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and

---

[23] Most, if not all, of the disciplinary proceedings against plaintiff involved "Tier II" hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock. *See* N.Y. Comp. Codes R. & Regs. tit. 7 § 253.7(a)(1)(iii). The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore*, 9:08-CV-085, 2010 WL 980233, at *5 (N.D.N.Y. Mar. 15, 2010) (collecting cases); *Pilgrim v. Bruce*, 9:05-CV-198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement); *Holland v. Goord*, 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest). However, defendants' pending motion does not challenged plaintiff's due process claim on the basis that he was not deprived of a liberty interest (perhaps because he received multiple, sequential disciplinary sentences); so the court will not address that issue.

impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (*citing, inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

## B.    Analysis

Liberally construed, the amended complaint alleges that defendant Gardner, who presided at most of plaintiff's disciplinary hearings, was not fair and impartial and found plaintiff guilty in the absence of even "some" evidence. For example, plaintiff alleges that he was found guilty by defendant Gardner of disobeying an order to get off the telephone, even though records indicated that plaintiff was not using the phone during the relevant time period; the disposition was later expunged in an Article 78 proceeding. (Dkt. No. 27 at 25, 49; Dkt. No. 145-1 at 14-16). Similarly, plaintiff was found guilty on several misbehavior reports relating to the duration of his showers despite having medical orders allowing extended showers; at least one of those dispositions was allegedly reversed in an Article 78 proceeding. (Dkt. No. 27 at 55-59; Dkt. No. 145-1 at 24). Plaintiff claims that, on one occasion, hearing officer Gardner told plaintiff "Every time you get a ticket you will be found guilty regardless. . . . I ain't fair and impartial." (Dkt. No. 27 at 57).

The allegations in the amended complaint are sufficient to state a plausible claim that plaintiff was denied procedural due process in connection with at least some

of his disciplinary proceedings because the hearing officer was not impartial and/or because of the lack of "some" supporting evidence. The court does not decide whether this due process claim could withstand a summary judgment motion, properly-documented with hearing transcripts and supporting documents and affidavits.

## VIII. Denial of Medical Care

### A. Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (*citing*, *inter alia*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). If the "unreasonable care" consists of a failure to provide any

treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185.  The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 F. App'x at 236 (*citing*, *inter alia*, *Chance v. Armstrong*, 143 F.3d at 702).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837.  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan*, 511 U.S. at 844.  Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of

serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord*, 467 F.3d at 281.

## B.    Analysis

Because of back injuries, plaintiff used a walker to ambulate short distances and needed a wheelchair otherwise. (Dkt. No. 27 at 17). He allegedly complained to various defendants, including Aube, Peterson, Kane, Stefinik, Gaye, Keys, and Cutler that storing and retrieving his wheelchair was causing him pain; but they denied him the assistance of other inmates. (Dkt. No. 27 at 18-20). On May 9, 2011, while trying to move his wheelchair, plaintiff "felt a . . . 'needle sharp' pain" in his spine and leg, collapsed on the floor, and could not move. (Dkt. No. 27 at 21).[24] Plaintiff was treated in the hospital and, upon his return to his housing unit, defendants Peterson and Kane continued to require that plaintiff move his wheelchair without assistance, notwithstanding his protests that he could not do so, given his pain. (Dkt. No. 27 at 22). As plaintiff struggled to store his wheelchair, he again collapsed on the floor. Plaintiff claims that C.O. Stefinik told the nurse "Nothing's wrong with him, he just . . . laid down on the floor[,]" and Sgt. Aube stated "leave his ass on the floor." (Dkt. No. 27 at 23). The defendants did not allow plaintiff to be taken for medical attention for "approximately half an hour" by which time, plaintiff's pain was so intense that he

---

[24] Elsewhere in the amended complaint, plaintiff seems to allege that his physical collapses while storing or retrieving his wheelchair happened in March 2011, not May 2011. (Dkt. No. 27 at 45).

cried.  (Dkt. No. 27 at 23).[25]

Plaintiff does not state that the delay in his treatment following his "second" collapse (Dkt. No. 27 at 45) resulted in any substantial deterioration of his medical condition.  However, the amended complaint, liberally construed, alleges that he suffered extreme pain for approximately 30 minutes before the identified defendants allowed him to get medical attention.  While a summary judgment motion, supported by plaintiff's medical records, may well establish that the one, relatively brief delay in allowing plaintiff medical attention was not sufficiently "serious" to satisfy the objective prong of the Eighth Amendment standard, this court cannot make that determination in the context of a Rule 12(b)(6) motion.  Similarly, while the court concludes that plaintiff has adequately alleged that the named corrections officers were deliberately indifferent to plaintiff's medical needs on at least one occasion, a summary judgment motion supported by affidavits from the defendant may establish that no rational fact finder could conclude that plaintiff satisfied the subjective prong necessary to establish an unconstitutional delay in medical care.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 134) be **GRANTED** as to defendants Fischer, Maly, and LeClaire, and as to plaintiff's conspiracy claim, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 134) be

---

[25] The amended complaint seems to allege that plaintiff collapsed under similar circumstances on at least one subsequent occasion.  (Dkt. No. 27 at 23-24).

31

otherwise **DENIED**, and it is further

ORDERED, that if the District Court adopts this recommendation, she shall return the case to me to set a schedule for discovery and any further substantive motions with respect to the surviving claims and defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:  November 17, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge