UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHEL TOLIVER,

                Plaintiff,

      vs.                        No. 9:12-CV-77 (MAD/ATB)

BRIAN FISCHER, et al.,

                Defendants.
_____

MICHEL TOLIVER, Plaintiff pro se
CATHY Y. SHEEHAN, Ass't Att'y Gen., Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

     Currently before this court is defendants' summary judgment motion, seeking dismissal of the surviving claims in plaintiff's amended civil rights complaint. (Dkt. No. 236). Plaintiff has filed a response in opposition to the motion. (Dkt. No. 242). The motion to dismiss has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Mae A. D'Agostino, United States District Judge. For the reasons stated below, this court recommends that defendants' summary judgment motion be granted in part, and that plaintiff's amended complaint be dismissed, in part without prejudice, and in part with prejudice.

## I.   <u>PROCEDURAL HISTORY</u>

     On January 17, 2012, plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that 20 employees of the New York State Department of

Correctional and Community Services ("DOCCS") violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). (Compl., Dkt. No. 1). By Decision and Order dated May 3, 2012, Judge D'Agostino dismissed, *sua sponte*, defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of plaintiff's constitutional rights. (Dkt. No. 9 at 8-10).

On June 28, 2012, plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), Judge D'Agostino accepted for filing against 17 of the original defendants, as well as Correction Officer ("C.O.") North.[1] Liberally construed, plaintiff's amended complaint asserted a First Amendment claim, based on the defendants' alleged filing of false misbehavior reports against plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; an equal protection claim based on alleged discrimination against plaintiff because of his race, disability, and/or sexual orientation; a conspiracy claim related to the retaliation and discrimination claims; a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and an Eighth Amendment claim for failure to provide adequate medical attention. (Dkt. No. 27 at 8-9, 35).

The Attorney General's Office filed a motion, pursuant to Fed. R. Civ. P.

---

[1] Judge D'Agostino again dismissed all claims against defendants Schneiderman, Bellamy, and Prack because the amended complaint did not adequately allege their personal involvement. (Dkt. No. 85 at 3-5).

12(b)(6), seeking dismissal of plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining defendants.[2] (Dkt. No. 134). Judge D'Agostino, adopting my Report-Recommendation (Dkt. No. 155), dismissed plaintiff's conspiracy claim, and all claims against defendants Fischer, Maly, and LeClaire, but otherwise denied defendants' motion to dismiss. (Dkt. No. 169).

As Judge D'Agostino has observed, plaintiff, in litigating this case, has made numerous

> abusive and frivolous filings, which have included more than twenty motions for preliminary injunctive relief, eight motions to amend the amended complaint, several requests for sanctions, repeated motions to compel discovery seeking evidence which is clearly irrelevant to the matter at hand, numerous motions for reconsideration of the Court's denials of Plaintiff's frivolous motions, and countless appeals to this Court of Magistrate Judge Baxter's denials of his frivolous requests. As the Court detailed in its April 15, 2015 Memorandum-Decision and Order, Plaintiff has filed approximately thirty lawsuits in the district courts of New York and has engaged in similar abusive tactics in many of them.

(Dkt. No. 233). Since defendants filed their summary judgment, plaintiff filed several further motions to amend or supplement his complaint (Dkt. Nos. 240, 241, 243, 245), which Judge D'Agostino denied as frivolous, vexatious, and in clear contravention of her repeated notices to plaintiff "that the Court will not permit [him] to amend the

---

[2] C.O. North, who, by then, was no longer an active DOCCS employee (Dkt. No. 91), had not been served with the amended complaint and was not then represented in the action. C.O. North has since accepted service (Dkt. Nos. 173, 174), and is represented by the Attorney General's Office, as are the other remaining 14 defendants.

amended complaint in this now four-year old case." (Dkt. Nos. 244, 246).[3]

## II.   FACTS AND CONTENTIONS

When plaintiff was transferred to Shawangunk in February of 2011, he required the assistance of a walker when inside his cell, and otherwise needed a wheelchair to ambulate, because of back problems. (Am. Compl., Dkt. No. 27 at 17).[4] He was assigned to a housing unit that was not wheelchair accessible so that he could attend a mandatory program available only in that cell block. (Dkt. No. 27 at 19). Plaintiff was told that his wheelchair had to be kept in a bin in a storage room and retrieved from that location whenever he required it to move around the facility. (Dkt. No. 27 at 17). Plaintiff alleges that he suffered substantial pain, and was injured on several occasions while attempting to store or retrieve his wheelchair, and that the defendants ignored these serious medical issues and delayed his referral for treatment. (Dkt. No. 27 at 17-18, 21-24). Plaintiff further claims that his repeated requests for inmate assistance with storing and retrieving his wheelchair were denied. (Dkt. No. 27 at 17-20).

Plaintiff alleges that, between March 2011 and May 2012, he filed a number of grievances, implicating various defendants, regarding the conditions of his confinement, including issues relating to the storage and retrieval of his wheelchair and

---

[3] In opposing the summary judgment motion, plaintiff raises claims that he unsuccessfully attempted to add to this action by various motions to amend that were denied. (See Pl.'s Opposition to Summary Judgement Motion, Dkt. No. 242 at 66-67). Those claims are not properly part of this action, and need not be addressed.

[4] Because the pages of the amended complaint are not all consecutively numbered, the court will refer to the pages in the header added, upon filing, by the court's CM-ECF system.

his ability to take extended showers because of his medical issues. (Dkt. No. 27 at 11-13, 40-41, 72-81). Plaintiff claims that defendants filed numerous false misbehavior reports against him in retaliation for pursuing grievances (Dkt. No. 27 at 24-26, 41-59), and because of his race and sexual orientation (as overtly gay) (Dkt. No. 27 at 35, 58-59). Plaintiff further alleges that he was denied due process in connection with the disciplinary hearings against him because he was found guilty by a biased hearing officer on many misbehavior reports, despite overwhelming evidence of his innocence or other mitigating circumstances. (Dkt. No. 27 at 25, 42, 49, 51-52).

Defendants contend that plaintiff's action should be dismissed because it was filed **before** he exhausted his administrative remedies, by completing the DOCCS grievance process, with respect to any of his surviving claims. This court agrees that, before he initiated this lawsuit, plaintiff failed to exhaust his administrative remedies with respect to all of his remaining claims, except for the due process claims relating to disciplinary proceedings, which must be exhausted by administrative appeals of the sanctions imposed, not through the grievance process. Accordingly, plaintiff's retaliation, equal protection, and Eighth Amendment medical claims should be dismissed without prejudice to refiling, to the extent exhaustion of administrative remedies through the grievance process has now been, or may still be completed with respect to these claims.

Defendants also argue that plaintiff's due process claims should be dismissed on the merits because the penalties served by plaintiff were not sufficiently severe to

create a liberty interest that would trigger his right to due process in connection with the disciplinary hearings. The court concludes, based on the established facts in the record, that plaintiff did not have a protected liberty interest in connection with any of the disciplinary proceedings challenged in the amended complaint. Accordingly, plaintiff's due process claim may be dismissed with prejudice.

Defendant have made other arguments as to why certain of plaintiff's claims should be dismissed on the merits. Those arguments need not be addressed in light of my recommendations, summarized above, which will dispose of all remaining claims.

## III.   SUMMARY JUDGMENT

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

To be sufficient to create a "factual issue," in the context of a summary judgment motion, an allegation in an affidavit or verified complaint must not be conclusory or overly general. *Smith v. Woods*, 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 & n.10 (N.D.N.Y. Apr. 24, 2006). Even where a complaint or affidavit contains specific assertions, the allegations "may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Id.,* 2006 WL 1133247, at *3 & n.11.

## IV.   **EXHAUSTION**

### A.   **Applicable Law**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies **prior to bringing a federal**

**civil rights action**. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c).

Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

To the extent a civil rights claims must be exhausted by the grievance process,[5] completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be initially filed. *See, e.g., Casey v. Brockley*, No. 9:13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *5 (N.D.N.Y. Nov. 9, 2015) (Rep't-Rec.), *adopted*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) ("receiving a decision from CORC after commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted before filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Guillory v. Haywood*, No. 9:13-CV-1564 (MAD/TWD), 2015 WL 268933, at *12 (N.D.N.Y. Jan.

---

[5] "Where an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing, . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted). *See also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

21, 2015); *Rodriguez v. Rosner*, No. 12-CV-958 (TJM/ATB), 2012 WL 7160117, at *5

(N.D.N.Y. Dec. 5, 2012) (Rep't-Rec.), *adopted*, 2013 WL 614360 (N.D.N.Y. Feb. 19,

2013). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion

defect existing at the time the action was commenced." *Guillory v. Haywood*, 2015

WL 268933, at *11 (citing, *inter alia*, *Neal v. Goord*, 267 F.3d at 122)).

When the Second Circuit decided *Giano*, it also decided four other related cases,

further clarifying the law in the Second Circuit regarding the PLRA's exhaustion

requirement, and specifying various instances in which the requirement could be

waived or excused.[6] Based on these cases, the Second Circuit developed a "three part

inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion

requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing

*Hemphill*, 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies

were available to the inmate; (2) whether defendants' own actions inhibiting

exhaustion estops them from raising the defense; and (3) whether "special

circumstances" justify the inmate's failure to comply with the exhaustion requirement.

*Id.* Although the Second Circuit has "questioned," without deciding, whether

*Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry in

---

[6] *See Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004) (remanding case to
determine if defendant's alleged threats constituted "special circumstances" justifying plaintiff's
failure to exhaust); *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004) (whether failure to exhaust
may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that
he was supposed to obtain was never forthcoming); *Johnson v. Testman*, 380 F.3d 691 (2d Cir.
2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion
requirement); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (complete dismissal is not required
when plaintiff brings both exhausted and unexhausted civil rights claims).

recent cases. *See, e.g.*, *Amador v. Andrews*, 655 F.3d 89, 102-103 (2d Cir. 2011) (declining to reach the issue, but noting that even under "pre-*Woodford* caselaw" the plaintiff had failed to establish either that defendants were estopped from asserting the defense or whether special circumstances excused exhaustion); *Heyliger v. Gebler*, 624 F. App'x 780, 782-83 (2d Cir. 2015)*; Davis v. State of New York*, 311 F. App'x 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011).[7]

## B. Analysis

In their answer to the amended complaint, the defendants properly asserted the affirmative defense that the plaintiff failed to exhaust his administrative remedies. (Answer ¶ 19 (Tenth Defense), Dkt. No. 171 at 4). Plaintiff's argument that the defendants waived their right to assert an exhaustion defense by not raising it in their pre-answer motion to dismiss (Pl.'s Opposition to Defendants' Statement of Material Facts ¶ 6, Dkt. No. 242-1 at 12), is without merit.[8]

---

[7] This court also notes that, based upon the concurring opinion in *Woodford*, it appears that the Second Circuit decisions have *not* been overruled in that respect. In his concurring opinion in *Woodford*, Justice Breyer specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 548 U.S. at 104 (Breyer, J. concurring) (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004)). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). This statement implies that there are still exceptions that a court may consider.

[8] *See Villante v. VanDyke*, 93 F. App'x 307, 309 (2d Cir. 2004) ("Federal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, such as an answer, not that it be the subject of a pretrial motion"; . . . "we conclude that VanDyke and Hall, having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment"). *See also Belgrave v. Pena*, 254 F.3d 384, 387-88 (2d Cir. 2001) (defendant did not waive its objection to former

Defendants have submitted an affidavit from Michael Cunningham, the supervisor of the Inmate Grievance Program ("IGP") at Shawangunk listing all of the grievance filed by plaintiff between February 2011 and July 2012. (Dkt. No. 236-3). Defendants also submitted a certified copy of a report from CORC showing plaintiff's appeals to CORC of grievances filed between 2011 and 2015. (Sheehan Affirm., Ex. B, Dkt. No. 236-8). The information from these two sources was collated in a spreadsheet summarizing plaintiff's grievance filings and appeals, attached as Appendix A to defendants' Memorandum of Law. (Dkt. No. 236-10 at 20-21). This data indicates that plaintiff filed only five grievances at Shawangunk before he filed his initial complaint on January 17, 2012, and that he fully exhausted only two of those grievances. The decisions of CORC with respect to the two fully appealed grievances were not rendered until late February or early March 2012, **after** plaintiff's initial complaint was filed. (Appendix A, Dkt. No. 236-10 at 21). Accordingly, defense counsel argues that plaintiff did not exhaust his administrative remedies with respect to

---

employee's failure to timely exhaust his administrative remedies by failing to assert untimely exhaustion as an affirmative defense in its original answer, where district court permitted the defendant to amend its answer to state such defense). The issue of exhaustion of administrative remedies is rarely raised successfully in a motion to dismiss. *See, e.g., Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks and citations omitted)); *Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101 (E.D.N.Y. 2005) ("keeping in mind that failure to exhaust is an affirmative defense, and that exhaustion need not be pled to state a claim, it is more appropriate in the case of this pro se plaintiff to [consider exhaustion] under a summary judgment standard," rather than the Rule 12(b)(6) standard). The plaintiff did not move to strike the exhaustion affirmative defense stated in defendants' post-motion answer, which was filed more than a year ago, at the start of the pretrial discovery process. Under all of the circumstances here, the court concludes that the defendants did not waive the exhaustion defense by not asserting it in their initial motion to dismiss.

any of his claims in this action before he filed his first complaint, requiring that the action be dismissed, presumably without prejudice.

Plaintiff responded to the defendants' presentation of his grievance history by claiming, in conclusory terms, that he submitted many more grievances than the defendants acknowledge, which the IGRC refused to file, and that he filed additional appeals to CORC, which CORC sometimes refused to accept. (Pl.'s Opposition to Defendants' Statement of Material Facts ¶¶ 2-4, Dkt. No. 242-1 at 2-3). Plaintiff's amended complaint, although it is often vague and confusing, appears to allege that he "circulated" or filed "complaints" or grievances on the following dates in 2011 that are not reflected on the defendants' spreadsheet--March 9, 22, 25 and 30. (Am. Compl., Dkt. No. 27 at 11-12). The amended complaint attaches a letter from DOCCS Dep. Commissioner Leclaire dated April 26, 2011, which responds to a letter of complaint from plaintiff and reminds plaintiff that "[a]llegations of misconduct by facility staff should be directed to facility officials through the established grievance mechanism or by writing to the Superintendent." (Dkt. No. 27 at 63). Thus, it appears that, when plaintiff now claims that he submitted grievances that were not properly filed by the IGRC, he may be referring to informal complaints that he failed to properly directed to the established grievance mechanism.

The only copy of a formal "grievance" that plaintiff has submitted in this action that does not appear to be reflected on the defendants' spreadsheet is dated March 9, 2011, and was attached to one of plaintiff's many unsuccessful motions to further amend the complaint. (Dkt. No. 243-4 at 31). In the Amended Complaint, plaintiff

alleges that he "circulated" this grievance to "the above named defendants" (Dkt. No. 27 at 11), so it is unclear whether he properly submitted this grievance to the IGRC. Plaintiff has filed no documentation suggesting that he ever appealed a denial of the March 9, 2011 grievance. In any event, the substance of plaintiff's complaint in the purported March 9th grievance was covered, in much greater detail, in his grievance dated March 10th, which was filed as Grievance No. 26770-11 by the IGRC and was appealed by plaintiff. (Dkt. No. 236-5 at 3-28). The court concludes that plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that the defendants have provided about plaintiff's grievance history, create a factual dispute material to the issue of whether plaintiff exhausted his administrative remedies before he filed his initial complaint.[9]

Similarly, plaintiff's claim that CORC sometimes refused to accept his appeals does not create a material issue of fact with respect to the exhaustion issue. Plaintiff has submitted two letters from CORC, dated July 11, 2011 and June 12, 2012, returning papers to him, and advising plaintiff that appeals of grievances must be submitted through the IGRC at his facility, and not sent directly to CORC.

---

[9] *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account."); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case").

(Supplemental Docs. in support of initial Complaint, Dkt. No. 4-2 at 8-9; Dkt. No. 27 at 70). Only the 2011 letter is relevant to the exhaustion issue in this case, because it pre-dates the filing of plaintiff's initial complaint. It is clear that the July 11, 2011 letter relates to Grievance No. 26770-11, which plaintiff ultimately appealed, in the proper manner, to CORC, notwithstanding that plaintiff's earlier attempt to appeal directly to CORC was refused. (*See* Pl.'s Opposition to Summary Judgment Motion, Dkt. No. 242 at 5-6; Dkt. No. 4-2 at 8-9). While CORC's return of plaintiff's initial inquiry relating to Grievance No. 26770-11 may have delayed CORC's decision, it did not preclude plaintiff from ultimately exhausting this grievance.

Plaintiff's primary argument as to why his failure to exhaust his administrative remedies before filing this action should be excused based upon the *Hemphill* factors, is that CORC far exceeded the time limits set by DOCCS regulations in denying his final appeal of Grievance No. 26770-11. (Pl.'s Opposition to Summary Judgment Motion, Dkt. No. 242 at 4-8). However, it is well-established in this Circuit that a plaintiff must wait for a final decision from CORC before filing an action, even if CORC's decision is untimely under DOCCS internal rules and regulations. *See, e.g., Casey v. Brockley*, 2015 WL 8008728, at *6 ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory v. Haywood*, 2015 WL 268933, at *12 ("although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense"). Otherwise, plaintiff has not established a material issue of fact with respect to the

availability of the administrative grievance remedies, or any other "special circumstances" that might justify plaintiff's failure to fully exhaust the grievance procedures before filing this action. The long list of grievances plaintiff pursued in 2011 and 2012 certainly indicate that plaintiff had access to the grievance process and was not inhibited in taking full advantage of it. (Appendix A, Dkt. No. 236-10 at 21).

Because plaintiff failed to complete the grievance process with respect to his retaliation, equal protection, and Eighth Amendment medical claims before he initiated this lawsuit, those claims should be dismissed without prejudice to refiling,[10] to the extent exhaustion of administrative remedies with respect to these claims, through the grievance process, has now been or still may be completed. While requiring plaintiff to initiate a new lawsuit now that at least some of his claims are fully exhausted may be judicially inefficient, "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Neal v. Goord*, 267 F.3d at 123 ("Moreover, . . . if during the pendency of a suit, the

---

[10] It is possible that a new action filed by plaintiff would be barred by the statute of limitations. *See, e.g., Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). In *Baez*, plaintiff's civil rights complaint, filed in June 2003 and amended in August 2003 was dismissed because plaintiff did not complete the grievance process until December 2003. The Second Circuit affirmed the District Court's January 2007 dismissal of Baez's action **with prejudice** because, even if the time during which plaintiff was exhausting his administrative remedies tolled the statute of limitations, any new action would be filed more than three years after exhaustion was completed. However, the court will not recommend dismissing plaintiff Toliver's claims with prejudice, given the possibility that he could raise equitable tolling issues or other grounds to overcome a statute of limitations problem. See, e.g., *Richardson v. Romano*, No. 00-CV-1076 (LEK/DEP), 2003 WL 1877955, at *2 & n.1 (N.D.N.Y. Mar. 31, 2003) (noting New York state case law indicating that an action dismissed for failure to exhaust administrative remedies may be re-filed within six months of the dismissal pursuant to N.Y. C.P.L.R. § 205(a)).

administrative process were to produce results benefiting plaintiff, the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset").

As noted, plaintiff's due process claims relating to disciplinary proceedings must be exhausted by administrative appeals of the sanctions imposed, not through the grievance process. (*See* note 5, above). Defendants have not argued that plaintiff filed to fully appeal the disciplinary hearings challenged in the Amended Complaint. Accordingly, those due process claims cannot be dismissed based on failure to exhaust, and must be addressed on the merits.

## IV.   DUE PROCESS

### A.   Legal Standards

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff was confined for an intermediate duration–between 101 and 305 days– . . . a district court must "make a fact-intensive inquiry," . . . examining "the actual circumstances of SHU confinement" in the case before it . . . ." *Palmer v. Richards*, 364 F.3d at 64-65 (citations omitted). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and

impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (*citing, inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

## B.     Analysis

Defendants argue, *inter alia*, that the disciplinary proceedings that plaintiff challenges in his amended complaint did not implicate a liberty interest triggering due process protections, because they all involved Tier II hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock. (Def.s' Mem. of Law at 15, Dkt. No. 236-10 (citing N.Y. Comp. Codes R. & Regs. tit. 7 § 253.7(a)(1)(iii)).[11] Defense counsel ignores the possible significance of the fact that, during two discrete periods in 2011, plaintiff served consecutive periods of keeplock of more than 30 days on multiple disciplinary charges, which arguably should be aggregated for the purposes of the due process analysis. However, even aggregating consecutive periods of keeplock where arguably appropriate, this court concludes that, given the absence of any allegation from plaintiff about unusually harsh conditions of

---

[11] The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore*, No. 9:08-CV-085, 2010 WL 980233, at *5 (N.D.N.Y. Mar. 15, 2010) (collecting cases).

keeplock, his liberty interests were not implicated by the disciplinary proceedings which are challenged in the amended complaint.

Defendants submitted a certified copy of plaintiff's Inmate Disciplinary History at Shawangunk, as well as copies of extensive records relating to some of plaintiff's disciplinary proceedings. (Sheehan Affirm., Ex. A, Dkt. Nos. 236-5, 236-6, 236-7; Ex. C., Dkt. No. 236-9 at 5-8). Plaintiff's inmate history does not list two misbehavior reports filed by defendant Budziszewski, which are included in Exhibit A to defense counsel's affirmation–a misbehavior report filed on July 25, 2011, for which plaintiff served a 15-day keeplock sentence between August 3 and 18, 2011 (Dkt. No. 236-6 at 69, 82-84); and a misbehavior report dated February 6, 2012, for which plaintiff received a suspended sentence of 30 days keeplock (Dkt. No. 236-5 at 145, 168-70).

Plaintiff's amended complaint claims that a few other misbehavior reports were filed against him in 2011 which are not reflected on the disciplinary history submitted by the defendants–a second report filed on March 10, 2011 by defendant Keys (Dkt. No. 27 at 24, 34, 44); a March 25, 2011 report filed by defendant DeGraff (Dkt. No. 27 at 11, 24, 34 -35, 48); and a December 12, 2011 report filed by defendant Budziszewski (Dkt. No. 27 at 26, 55-56). Plaintiff, however, does not provide any documentation relating to these alleged misbehavior reports. Nor does he make any specific allegation to suggest that he served punishment on disciplinary charges brought against him prior to the filing of his amended complaint on June 26, 2012 beyond that reflected in his disciplinary history or in the other disciplinary records submitted by the defendant.

Accordingly, the court concludes, based on the authority set forth above (*see* note 9), there is no material issue of fact with respect to the time served by plaintiff in keeplock[12] at Shawangunk as a result of the misbehavior reports relevant to plaintiff's due process claims in his amended complaint. Plaintiff was sentenced to a total of **59 days of consecutive keeplock served between March 14 and May 11, 2011**, on several misbehavior reports issued in March (Dkt. No. 236-9 at 7-8); **16 days of keeplock served between August 3 and 18, 2011**, on the July 25, 2011 misbehavior report included in Ex. A (Dkt. No. 236-6 at 69, 82-84), but not reflected on plaintiff's disciplinary history; a total of **64 days of consecutive keeplock served between October 14 and December 16, 2011**, on two misbehavior reports filed in October (Dkt. No. 236-9 at 7); **30 days of keeplock, suspended**, on the February 6, 2012 misbehavior report included in Ex. A (Dkt. No. 236-5 at 145, 168-70), but not reflected on plaintiff's disciplinary history; **44 days of keeplock served between March 7 and April 19, 2012** in connection with a March 7, 2012 misbehavior report (Dkt. No. 236-9 at 7); and **30 days of keeplock, suspended to August 23, 2102** on a May 9, 2012

_____

[12]"Shawangunk is a maximum security prison that is designed and operated to house high profile and/or long term inmates." *Vail v. Smith*, No. 9:12-CV-234 (GTS/RFT), 2015 WL 792224, at *6 (N.D.N.Y. Feb. 25, 2015). The facility has "general population" units, as well as a SHU. *Orraca v. McCreery*, No. 9:04-CV-1183 (DNH/DEP), 2008 WL 4279509, at *2, 9 (N.D.N.Y. Sept. 15, 2008). "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell for the duration of the disciplinary sanction. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989). At Shawangunk, "keeplock" would appear to refer to conditions where inmates are confined for twenty-three hours a day in a general population housing unit cell. *Holmes v. Grant*, No. 03 CIV. 3426, 2006 WL 851753, at *2 n. 2 (S.D.N.Y. Mar. 31, 2006). Although the court need not rely on this assumption to sustain my ultimate conclusion that plaintiff has suffered no loss of a liberty interest, keeplock conditions in general population would appear to be generally less harsh than conditions in an SHU.

misbehavior report (Dkt. No. 236-9 at 7).[13]

"Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 F. App'x 120, 122 (2d Cir. 2008) (citations omitted). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271 (LEK/GHL), 2007 WL 4555932, at *8 & n. 40 (N.D.N.Y. Dec. 19, 2007) (collecting cases). Because the disciplinary hearings at issue were all conducted by defendant Gardner, the 59-day period of keeplock consecutively served by plaintiff between March and May, 2011 should be aggregated for the purposes of evaluating whether plaintiff's liberty interests were infringed. Similarly, the 64-day period of keeplock consecutively served by plaintiff between October and December, 2011 should be aggregated. Otherwise plaintiff's keeplock sentences should be considered separately, for the purposes of due process analysis, because they were not served contiguously and were separated by periods of almost two months, or more.[14]

---

[13] Plaintiff began serving more severe disciplinary sentences following disciplinary proceedings in July 2012, but that, and subsequent disciplinary hearings occurred after plaintiff filed his amended complaint, and are not part of this action. (Dkt. No. 236-9 at 6-7).

[14] Because the court has no information to indicate that plaintiff's suspended keeplock sentences were ever served by him, they would not be significant in the due process analysis. *See Bennett v. Fischer*, No. 9:09-CV-1236 (FJS/DEP), 2012 WL 1085855, at *4 n.9 (N.D.N.Y.

The Second Circuit has "previously held that . . . a 101-day aggregated confinement in a highly-restrictive segregated housing of a New York correctional facility, without more, was not an atypical confinement").[15] *Reynoso v. Selsky*, 292 F. App'x at 122-23 (citations omitted). Plaintiff has not, in his extensive filings over the past four years of litigation in this action, made any allegations that the conditions he experience while serving keeplock sentences at Shawangunk were more harsh than typical keeplock conditions. Therefore, none of the periods of keeplock confinement he served–all 64 days or less–would implicate a liberty interest triggering due process protection. *See, e.g.*, *Holland v. Goord*, 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest); *Phillips v. Lecuyer*, 9:08-CV-878 (FJS/ATB), 2013 U.S. Dist. LEXIS 36452, at 47-48 (N.D.N.Y. Feb. 19, 2013) (Rep't-Rec.), *adopted*, 2013 U.S. Dist. LEXIS 35267 (N.D.N.Y. Mar. 14, 2013) ("[t]he conditions which plaintiff alleged he experienced over the first 77 days of SHU confinement properly attributed to Curtis Drown's disciplinary determination were not

Jan. 9, 2012) (Rep't -Rec.), *adopted*, 2012 WL 1037948 (N.D.N.Y. Mar. 27, 2012) (if "plaintiff was sentenced to a period of sixty days of disciplinary SHU confinement and the penalty imposed was suspended and never served, then he ultimately will be unable to establish the deprivation of a cognizable liberty interest" (citing *Scott v. Albury*, 156 F.3d 283, 287-88 (2d Cir.1998) ("[n]o right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination")).

[15] The SHU conditions which the Second Circuit found not to create a liberty interest over 101 days included solitary confinement for 23 hours per day, one hour of exercise outside of the cell, limited showers per week, and the loss of various privileges. *Sealey v. Giltner*, 197 F.3d 578, 581 & n.1, 589 (2d Cir. 1999).

more severe than "normal" SHU conditions as defined by *Sealey*, and did not give rise to a protected liberty interest"); *Pilgrim v. Bruce*, 9:05-CV-198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement); *Holmes v. Grant*, No. 03 CIV. 3426, 2005 WL 2839123, at *5 (S.D.N.Y. Oct. 25, 2005) (Rep't-Rec.), *adopted*, 2006 WL 851753 (S.D.N.Y. Mar. 31, 2006) (sixty days in the SHU at Shawangunk is "insufficient to constitute a deprivation of a liberty interest").[16]

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that defendants summary judgment motion (Dkt. No. 236)

---

[16] Second Circuit cases that have found a possible deprivation of a liberty interest in SHU confinements of less than 101 days are distinguishable because they involved substantial evidence that the inmate suffered conditions more severe than "normal" SHU restrictions. *Cf. Palmer v. Richards*, 364 F.3d at 66 (77-day SHU confinement could implicate due process rights where plaintiff alleged that he was deprived of his property, personal clothing, grooming equipment, hygienic products, reading and writing materials, communication with his family, personal food and vitamin supplements, and placed in mechanical restraints during escorts); *Welch v. Bartlett*, 196 F.3d 389, 393-94 (2d Cir. 1999) (90-day SHU confinement could infringe liberty interest where plaintiff alleged that he received inadequate toilet paper, soap and cleaning supplies, a filthy mattress, and infrequent changes of clothes); *Davis v. Barrett*, 576 F.3d at 134-35 (given plaintiff's allegations that (1) his cell had no furniture, and thus all items, including his clothes and food tray, had to be kept on the floor; (2) that his mattress was "infected" with body waste; and (3) that his cell was subject to "daily" flooding, and feces and urine thrown by other inmates, an issue of fact exists as to the actual conditions of plaintiff's 55 days of SHU confinement and summary judgment should not have been granted on his due process claim).

be **GRANTED IN PART**,[17] as discussed above,[18] and it is further

**RECOMMENDED**, that plaintiff's remaining retaliation, equal protection, and Eighth Amendment medical claims in plaintiff's Amended Complaint (Dkt. No. 27) should be dismissed without prejudice to refiling in a new action, to the extent

---

[17] On July 27, 2015, plaintiff filed a notice of an interlocutory appeal (Dkt. No. 204) of Judge D'Agostino's April 15, 2015 Memorandum-Decision and Order denying plaintiff's twentieth motion seeking preliminary injunctive relief (Dkt. No. 179). Judge D'Agostino denied plaintiff's motion because the injunctive relief sought was not related to this action or the named defendants, because it involved conclusory and speculative allegations of ongoing retaliation purportedly relating to plaintiff's filing of this action, and/or because subsequent events mooted plaintiff's demands for injunctive relief. (4/15/2015 Memorandum-Decision and Order at 8-10). The Second Circuit dismissed plaintiff's appeal on November 14, 2015, but plaintiff's motion for reconsideration before the Circuit is still pending. (See 1/28/2016 Docket Entry). "[A]n appeal from an interlocutory order granting or denying a preliminary injunction, which is appealable under 28 U.S.C. § 1292(a), does not divest the district court of jurisdiction [with respect to those matters not involved in the appeal], and the case proceeds on the merits unless otherwise ordered." *Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.*, 55 F. Supp. 2d 231, 234 (S.D.N.Y. 1999) (citing, *inter alia*, *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989)). The grounds for Judge D'Agostino's denial of plaintiff's request for preliminary injunctive relief, technically still under consideration by the Second Circuit, have nothing to do with the merits of the remaining claims in plaintiff's Amended Complaint. Accordingly, the appeal does not, in this court's view, divest the District Court of jurisdiction to resolve defendants' summary judgment motion. On February 23, 2016, plaintiff filed another notice of appeal, of Judge D'Agostino's February 8, 2016 text order which, *inter alia*, denied one of plaintiff's many motions to further amend his complaint. An interlocutory appeal from a motion to amend is clearly frivolous, and also does not divest the District Court of jurisdiction. *See, e.g.*, *Gurvey v. Cowan, Leibowitz & Latman, P.C.*, No. 06 CIV. 1202, 2015 WL 5472893, at *2 & n.1 (S.D.N.Y. Sept. 17, 2015) ("[w]here, as here, a party files a frivolous interlocutory appeal [of, *inter alia*, the denial of a motion to file a sixth amended complaint], a district court is not divested of jurisdiction") (citing *United States v. Rodgers*, 101 F.3d 247, 251-52 (2d Cir.1996) ("We fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on [the appeals court] the power to do nothing but dismiss the appeal."). *See also Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 650-51 (2d Cir. 1987) ("[a]n order denying a motion to amend a pleading is not appealable as a 'final decision' within the meaning of 28 U.S.C. § 1291 (1982) . . . [and is not] an order immediately appealable under the 'collateral order' exception to the final judgment rule").

[18] Defendants' arguments to dismiss plaintiff's remaining retaliation, equal protection, and Eighth Amendment medical claims, on the merits, were not addressed by the court.

exhaustion of administrative remedies through the grievance process, has now been or may still be completed with respect to these claims, and it is further

**RECOMMENDED**, that plaintiff's procedural due process claims in the Amended Complaint be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated: March 22, 2016**

Hon. Andrew T. Baxter
U.S. Magistrate Judge