**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHEL TOLIVER,**

                            **Plaintiff,**

  vs.                                              **9:12-CV-00077**
                                                        **(MAD/ATB)**

**J. STEFINIK,** *Correction Officer, Shawangunk Correctional Facility;* **J. GARDNER,** *Lieutenant Hearing Officer, Shawangunk Correctional Facility;* **STONE,** *Corrections Officer, Shawangunk Correctional Facility;* **AUBE,** *Sgt. In House Unit, Shawangunk Correctional Facility;* **GAYE (JOHN DOE),** *Corrections Officer, Shawangunk Correctional Facility;* **KEYS,** *Corrections Officer, Shawangunk Correctional Facility;* **L. PINGOTT,** *Captain (Security), Shawangunk Correctional Facility;* **D. DEGRAFF,** *Corrections Officer, Shawangunk Correctional Facility;* **SERGEANT PRESTON,** *Sergeant Corrections, Shawangunk Correctional Facility;* **R. CUTLER,** *Corrections Officer, Shawangunk Correctional Facility;* **BUDZISZEWSKI,** *Corrections Officer, Shawangunk Correctional Facility;* **R. KANE,** *Corrections officer, Shawangunk Correctional Facility;* **C.O. North; J. PETERSON,**

                              **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **MICHEL TOLIVER**<br>464 Hudson Street, #222<br>New York, New York 10014<br>Plaintiff *Pro Se* | |
| **OFFICE OF THE NEW YORK**<br>**STATE ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **CATHY Y. SHEEHAN, AAG** |

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On January 17, 2012, Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that twenty employees of the New York State Department of Corrections and Community Supervision ("DOCCS") violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). *See* Dkt. No. 1. By Decision and Order dated May 3, 2012, this Court dismissed, *sua sponte*, Defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of Plaintiff's constitutional rights. *See* Dkt. No. 9 at 8-10.

On June 28, 2012, Plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), this Court accepted for filing against seventeen of the original Defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint. Liberally construed, the surviving claims in Plaintiff's amended complaint include (1) a First Amendment claim, based on Defendants' alleged filing of false misbehavior reports against Plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; (2) an equal protection claim based on alleged discrimination against Plaintiff because of his race, disability, and/or sexual orientation; (3) a conspiracy claim related to the retaliation and discrimination claims; (4) a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and (5) an Eighth Amendment claim for failure to provide adequate medical care. Dkt. No. 27 at 8-9; Dkt. No. 35. Plaintiff seeks both monetary and injunctive relief. Dkt. No. 27 at 14.

Defendants filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining

2

Defendants.[1]  *See* Dkt. No. 134.  Plaintiff responded to the motion to dismiss, and defense counsel chose not to file a reply.  Dkt. No. 150.  On November 17, 2014, Magistrate Judge Baxter issued a Report-Recommendation recommending that the Court grant-in-part and deny-in-part Defendants' motion to dismiss.  Dkt. No. 155.  This Court adopted Magistrate Judge Baxter's November 17, 2014 Report-Recommendation, dismissing Plaintiff's conspiracy claim and all claims against Defendants Fischer, Maly, and LeClaire.

    This Court has previously found that, in litigating this case, Plaintiff has made numerous

> abusive and frivolous filings, which have included more than twenty motions, for preliminary injunctive relief, eight motions to amend the amended complaint, several requests for sanctions, repeated motions to compel discover seeking evidence which is clearly irrelevant to the matter at hand, numerous motions for reconsideration of the Court's denials of Plaintiff's frivolous motions, and countless appeals to this Court of Magistrate Judge Baxter's denials of his frivolous requests.

*See* Dkt. No. 233.  Since Defendants filed their summary judgment motion, Plaintiff has filed several additional motions to amend or supplement his amended complaint, which this Court denied as frivolous, vexatious, and in clear contravention of repeated notices to Plaintiff "that the Court will not permit [him] to amend the amended complaint in this now four-year old case."  *See* Dkt. Nos. 244, 246.  Plaintiff filed two Interlocutory Appeals both of which were dismissed by the Second Circuit.  *See* Dkt. Nos. 252, 256.

    On March 22, 2016, Magistrate Judge Andrew T. Baxter issued a Report-Recommendation recommending that Defendants' summary judgment motion be granted in full.[2]

---

[1] C.O. North, who, by then, was no longer an active DOCCS employee, had not been served with the amended complaint and was not then represented in this action.  *See* Dkt. No. 91.  C.O. North has since accepted service, and is currently represented by the Attorney General's Office, as are the other remaining thirteen Defendants.

[2] Although Magistrate Judge Baxter's March 22, 2016, Report-Recommendation indicates

(continued...)

*See* Dkt. No. 249. Specifically, Magistrate Judge Baxter found that Plaintiff's retaliation, equal protection, and Eight Amendment medical indifference claims should be dismissed without prejudice for failure to exhaust all available administrative remedies. *See id.* Further, Magistrate Judge Baxter recommended dismissing Plaintiff's procedural due process claims with prejudice because Plaintiff's factual allegations failed to implicate a liberty interest that would warrant due process protection.

Currently before this Court is Magistrate Judge Baxter's Report-Recommendation, to which neither party has objected.

## II. DISCUSSION

**A.    Standard**

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

---

[2](...continued)
that the Defendants' summary judgment motion should be granted in part, it is clear upon review that all remaining claims in Plaintiff's amended complaint must be dismissed on the grounds stated. Magistrate Judge Baxter found it unnecessary, as does this Court, to address multiple grounds on which to dismiss the same claims. Therefore, the Report-Recommendation actually recommends granting Defendants' summary judgment motion in full, terminating the instant action in its entirety.

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding pro se, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point") (citation omitted). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a pro se party's failure to object to a report-recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

In the present matter, Magistrate Judge Baxter provided Plaintiff adequate notice that he was required to file any objections to the Report-Recommendation, and specifically informed him that failure to object to any portion of the report would preclude his right to appellate review. *See* Dkt. No. 249 at 26. Specifically, Magistrate Judge Baxter informed Plaintiff that "**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72." Dkt. No. 249 at 26.

Magistrate Judge Baxter clearly provided Plaintiff with sufficient notice of the consequences of failing to object to the Report-Recommendation. Although Plaintiff requested and was granted two extensions of time to file objections, no objections have been filed.

5

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and, based on the undisputed facts, judgment for the movant is warranted as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because

6

they lack a legal education. *Id.* at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment." *Kotler v. Fischer*, No. 9:09-CV-01443, 2012 WL 929823, *12 (N.D.N.Y. Mar. 19, 2012) (citations omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Exhaustion**

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1983; 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *see, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the

applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC") which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to Central Office Review Committee ("CORC"), which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three of these levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to § 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). When a plaintiff presents a claim arising "directly out of a disciplinary or administrative segregation hearing . . . (*e.g.*, a claim of denial of procedural due process), he exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal." *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007) (internal quotation and citations omitted); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed

8

before an action asserting that claim may be initially filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

When the Second Circuit decided *Giano*, it also decided four other related cases, further clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement, and carved out particular instances in which the requirement could be waived or excused. *See Hemphill*, 380 F.3d at 686; *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ortiz v. McBride*, 380 F. 3d 649 (2d Cir. 2004). Based on these cases, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement: (1) whether the administrative remedies were available to the inmate; (2) whether the defendants' own actions inhibited exhaustion, estopping them from raising the defense of exhaustion; (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686). Although the Second Circuit has "questioned," without deciding, whether *Hemphill* remains good law after *Woodford*, it has applied the three-part inquiry to recent cases. *See*, *e.g.*, *Heyliger v. Gebler*, 624 Fed. Appx. 780, 782-83 (2d Cir. 2015);

*Davis v. State of New York*, 311 Fed. Appx. 397, 399 (2d Cir. 2009); *Snyder v. Whittier*, 428 Fed. Appx. 89, 91 (2d Cir. 2011).

In their answer to the amended complaint, Defendants properly asserted the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to bringing this federal civil rights action. *See* Dkt. No. 171 at 4. Plaintiff's argument that Defendants waived their right to assert an exhaustion defense by not raising it in their pre-answer motion to dismiss is without merit. *See* Dkt. No. 242-1 at 12; *Villante v. VanDyke*, 93 Fed. Appx. 307, 309 (2d Cir. 2004) (explaining that "[f]ederal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, such as an answer, not that it be the subject of a pretrial motion" and finding that the defendants, "having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment"); *see also Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (permitting a defendant to amend its answer to state an exhaustion defense). As Magistrate Judge Baxter correctly found, Defendants did not waive the exhaustion defense by not asserting it in their initial motion to dismiss. *See* Dkt. Nos. 104, 171.

Defendants have submitted an affidavit from Michael Cunningham, the supervisor of the Inmate Grievance Program ("IGP") at Shawangunk listing all of the grievances filed by Plaintiff between February 2011 (the date of Plaintiff's transfer to Shawangunk) and July 2012. *See* Dkt. No. 236-3 at 2. Additionally, Defendants submitted a certified copy of a CORC report showing Plaintiff's appeals to CORC of grievances filed between 2011 and 2015.[3] *See* Dkt. No. 236-8 at 3-5. This data indicates that Plaintiff filed five grievances at Shawangunk before he filed his

---

[3] The information from these two sources was collated in a spreadsheet summarizing Plaintiff's grievance filings and appeals, attached as Appendix A to Defendants' Memorandum of Law. *See* Dkt. No. 236-10 at 20-21.

initial complaint on January 17, 2012, and that although he fully exhausted two of those claims, they were not exhausted until February and March of 2011, after Plaintiff filed his initial complaint. *See* Dkt. No. 236-10 at 21.

In his response in opposition to Defendants' motion for summary judgment, Plaintiff claims, in conclusory terms, that he submitted many more grievances than Defendants acknowledged in their motion, which the IGRC refused to file, and that he filed additional appeals to CORC, which CORC refused to accept. *See* Dkt. No. 242-1 at 2-3. Plaintiff's amended complaint, although often vague and confusing, appears to allege that he "circulated" or filed "complaints" or grievances on the following dates: March 9, 22, 25, and 30. *See* Dkt. No. 27 at 11-12. Plaintiff attached a letter to his amended complaint sent by DOCCS Deputy Commissioner LeClaire dated April 26, 2011, in response to a complaint from Plaintiff, which reminds Plaintiff that "[a]llegations of misconduct by facility staff should be directed to facility officials through the established grievance mechanism or by writing to the Superintendent." *See* Dkt. No. 27 at 63. Thus, it appears as though Plaintiff may be referring to informal complaints that he failed to properly direct to the established grievance mechanism.

Plaintiff has submitted a copy of one formal grievance, dated March 9, 2011, that does not appear to be reflected on Defendants' spreadsheet. In the amended complaint, however, Plaintiff merely alleges that he "circulated" this grievance to "the above named defendants," so it is unclear whether he properly submitted this grievance to IGRC. *See* Dkt. No. 27 at 11, 63; Dkt. No. 236 at 21; Dkt. No. 243-4 at 31. Further, Plaintiff has not submitted any documentation to suggest that he appealed a denial of the March 9, 2011 grievance. *See* Dkt. No. 27 at 11. Finally, whether Plaintiff properly submitted the March 9, 2011, grievance is unimportant as the substance

11

of that grievance was covered, in much greater detail, in Plaintiff's March 10, 2011 grievance, which was properly submitted to IGRC and appealed. *See* Dkt. No. 236 at 21.

As Magistrate Judge Baxter correctly found, Plaintiff's vague and conclusory allegations that he filed other grievances that were not accepted by the IGRC at Shawangunk do not, in light of the documentation that Defendants have provided about Plaintiff's grievance history, create a factual dispute material to the issue of whether Plaintiff exhausted his administrative remedies before he filed his initial complaint. *See Jeffreys v. City of new York*, 426 F.3d 549, 554 (2d Cir. 2005) (explaining that where a plaintiff, in response to a motion for summary judgment, provides only their "own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account") (quotation and internal citation omitted); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case") (citations omitted).

Similarly, as Magistrate Judge Baxter correctly found, Plaintiff's claim that CORC sometimes refused to accept his appeals does not create a material issue of fact with respect to the exhaustion issue. Plaintiff has submitted two letters, received by him from CORC, dated July 20, 2011,[4] and June 12, 2012, returning papers to him and advising Plaintiff that appeals of grievances must be submitted through the IGRC at his facility, and not sent directly to CORC for

---

[4] Magistrate Judge Baxter's March 22, 2016, Report-Recommendation refers to this as the July 11, 2011 letter, which was the date on which Plaintiff received an adverse decision to his SHG-26770-11 Grievance; however, the actual letter from Karen Bellamy, Director of IGP, is dated July 20, 2011.

12

review. *See* Dkt. No. 4-2 at 8-9; Dkt. No. 27 at 70. Only the July 20, 2011 letter is relevant to the exhaustion issue in this case because it pre-dates the filing of Plaintiff's initial complaint, whereas the June 12, 2012, letter was sent and received after the commencement of this action. *See* Dkt. No. 4-2 at 9. It is clear that the July 20, 2011 letter refers to Grievance No. 26770-11, which Plaintiff did ultimately appeal to exhaustion. *See* Dkt. No. 236-10 at 21. While CORC's return of Plaintiff's initial inquiry relating to Grievance No. 26770-11 may have delayed CORC's decision, it was Plaintiff's own mistake that would have caused that delay and would not estop Defendants from using the affirmative defense of exhaustion, nor is it a "special circumstance" under the *Hemphill* factors.

Plaintiff's primary argument as to why his failure to exhaust administrative remedies before filing this action should be excused, is that CORC far exceeded the time limits set by DOCCS regulations in denying his final appeal of Grievance No. 26770-11. *See* Dkt. No. 242-1 at 4-8. However, it is well-established law in the Second Circuit that a plaintiff must wait for a final decision from CORC before filing an action, even if CORC's decision is untimely under DOCCS internal rules and regulations. *See Casey*, 2015 WL 8008728, at *6 ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory*, 2015 WL 268933, at *12 ("although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense" (citation omitted)). The numerous grievances pursued by Plaintiff in 2011 and 2012, as well as the two appealed grievance decisions, clearly indicate that Plaintiff had access to, and took advantage of, the grievance process and was thus not inhibited from fully utilizing the grievance process. *See* Dkt. No. 236-10 at 21. Therefore, Plaintiff has failed to establish a material issue of fact with respect

to the availability of the administrative grievance remedies that might justify Plaintiff's failure to exhaust the administrative grievance process before filing this action.

As Magistrate Judge Baxter correctly found, Plaintiff's retaliation, equal protection, and Eighth Amendment medical claims must be dismissed without prejudice for failure to exhaust the administrative grievance process prior to filing this action. While requiring Plaintiff to initiate a new lawsuit now that at least two of his claims have been fully exhausted may seem judicially inefficient, if the resulting decision is favorable to the plaintiff "the federal court will have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset." *Neal*, 267 F.3d at 123. Moreover, "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court." *Id.*

**C.  Due process claims**

Defendant's have not argued that Plaintiff failed to fully appeal the disciplinary hearings challenged in the Amended Complaint. *See* Dkt. Nos. 27, 236. Accordingly, as Magistrate Judge Baxter correctly found, the due process claims cannot be dismissed based on failure to exhaust, and must be addressed on the merits. *See* Dkt. No. 249.

The Fourteenth Amendment to the Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). These procedural protections include advance written notice of the charges, a fair and impartial

14

hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)) (other citation omitted). Additionally, the hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (other citation omitted).

To successfully state a claim under section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)); *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In *Sandin*, the Supreme Court held that although states may create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. 483-84 (internal citations omitted).

The Second Circuit has refused to set a bright line rule on when confinement becomes atypical. "In order to determine whether a liberty interest has been affected, district courts are required to examine the circumstances of a confinement . . . and to identify with specificity the facts upon which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.

15

1998) (citations omitted). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that confinement in a Special Housing Unit ("SHU"), without unusual conditions, for a period of up to 101 days will not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *see Colon v. Howard*, 215 F.3d 227, 231, 232 n.5 (2d Cir. 2000). The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

"Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." *Reynoso v. Selsky*, 292 Fed. Appx. 120, 122 (2d Cir. 2008) (citation omitted). "Generally, it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement [that may be aggregated] when (1) they are contiguous *and* (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Taylor v. Artus*, No. 9:05-CV-271, 2007 WL 4555932, *8 (N.D.N.Y. Dec. 19, 2007) (collecting cases) (emphasis in original).

Although all relevant disciplinary proceedings involved Tier II hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock and would not, therefore, trigger due process protection individually, it is appropriate to aggregate two discrete periods in 2011 for due process analysis purposes. During these two discrete periods, Plaintiff served consecutive terms of confinement exceeding 30 days, and all of Plaintiff's disciplinary

16

hearings at Shawangunk were conducted by the same individual, Defendant Gardner.[5] *See* Dkt. No. 236-10 at 17 (citing N.Y. Comp. Codes R. & Regs. Tit. 7 § 253.7(a)(1)(iii)).[6] When aggregated, these two distinct periods constitute a 59 day consecutive period of keeplock served between March 14 and May 11, 2011, and a 64 day consecutive period of keeplock served between October 14 and December 16, 2011. *See* Dkt. No. 236-9 at 7-8. However, as Magistrate Judge Baxter correctly found, Plaintiff's liberty interests were not implicated by the disciplinary proceedings challenged in the amended complain, even after aggregating the two consecutive periods of keeplock, given the absence of any allegations from Plaintiff about unusually harsh conditions of his keeplock.

Plaintiff's inmate history does not list two misbehavior reports filed by Defendant Budziszewski, which Defendants included with their motion. *See* Dkt. No. 236-6 at 69, 82-84. Plaintiff contends in his amended complaint that there were additional misbehavior reports filed against him in 2011 which are not reflected on the disciplinary history submitted by Defendants. *See* Dkt. No. 27 at 11, 24, 34-35, 48. Plaintiff, however, does not provide any specific allegations to suggest that he served punishment on disciplinary charges brought against him prior to the filing of his amended complaint on June 26, 2012 beyond that reflected in his disciplinary history or in the other disciplinary records submitted by Defendants.

---

[5] Plaintiff began serving more severe disciplinary sentences following disciplinary proceedings in July 2012, but that, and subsequent disciplinary hearings occurred after Plaintiff filed his amended complaint, and are not part of this action. *See* Dkt. No. 236-9 at 6-7.

[6] The federal district courts in New York, applying *Sandin*, have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the due process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g.*, *Brown v. Secore*, No. 9:08-CV-085, 2010 WL 980233, *5 (N.D.N.Y. Mar. 15, 2010) (collecting cases).

Plaintiff has not submitted any evidence establishing, or even made any allegations, that the conditions he experienced while serving keeplock sentences at Shawangunk were more harsh than typical keeplock conditions. Therefore, as Magistrate Judge Baxter correctly found, none of the periods of keeplock confinement he served would implicate a liberty interest warranting due process protection. *See, e.g.*, *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, *7 (W.D.N.Y. July 13, 2006) (finding 77 days in keeplock during which the plaintiff was deprived of TV, phone, packages, and commissary, and was unable to attend Muslim services and classes, did not constitute a liberty interest); *Pilgrim v. Bruce*, No. 9:05-CV-198, 2008 WL 2003792, *15 (N.D.N.Y. May 7, 2008) (finding that a plaintiff's conclusory allegations, which notably failed to include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subject to more severe conditions than in normal restrictive confinement); *Holmes v. Grant*, No. 03-CIV-3426, 2005 WL 2839123, *5 (S.D.N.Y. Oct. 25, 2005) (finding that sixty days in the SHU at Shawangunk is "insufficient to constitute a deprivation of a liberty interest").

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's due process claims.

### III. CONCLUSION

After carefully considering Magistrate Judge Baxter's Report-Recommendation, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's March 22, 2016 Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' summary judgment motion is **GRANTED in full**; and the Court further

**ORDERS** that Plaintiff's retaliation, equal protection, and Eighth Amendment medical indifference claims are **DISMISSED** without prejudice; and the Court further

**ORDERS** that Plaintiff's procedural due process claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 15, 2016
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge